# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| AUGUSTINA C. AMALU, individually and as next kin of and Administrator of the Estate of IFEYINWA STEPHANIE AMALU, deceased, *et. al.* <br><br> Plaintiffs, <br><br> vs. <br><br> STEVENS TRANSPORT, INC., *et. al.*, <br><br> Defendants. | No. 15-cv-01116-STA-egb <br> CONSOLIDATED |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT OF LSH TRANSPORT, LLC; STEVE HURT; K & S TRUCKING; AND TIM MILLS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TONY R. MILLS, AS TO CROSS-CLAIM ASSERTED BY DAVID LINDSEY INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KRISTI MILLS

This is a wrongful death action arising from a multi-vehicle accident that occurred on Interstate 40 in West Tennessee. The accident involved, *inter alia*, a vehicle occupied by Ifeyinwa Stephanie Amalu and Chinelo Udeozo and a tractor-trailer driven by Tony Mills with a passenger, Kristi Mills. All the aforementioned parties died as a result of the accident. Defendants LSH Transport, LLC; Steve Hurt; K & S Trucking; and Tim Mills, as personal representative of the Estate of Tony Mills, have filed a motion for summary judgment as to the cross-claim asserted against them by David Lindsey, individually and as next of kin and as administrator of the Estate of Kristi Mills. (ECF No. 383.) The Estate of Kristi Mills has filed a

response to the motion (ECF No. 430), and Defendants have filed a reply to the response. (ECF No. 449.) For the reasons set forth below, Defendants' motion is **DENIED**.

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must review all the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Statement of Material Facts

Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Any party opposing summary judgment must respond to each fact

stated by the movant by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed, with specific citations to the record. "Failure to respond to a moving party's statement of material facts ... shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party "fails to properly address another party's assertion of fact ... the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The parties have agreed that the following facts are undisputed for the purpose of deciding this motion unless otherwise indicated. (Resp. to Defs' Facts, ECF No. 430-9; Defs' Resp. to Add. Facts, ECF No. 449.)

After marrying Tony Mills, Kristi Mills quit her job in order to ride with Tony Mills while he worked as an over-the-road truck driver. Kristi Mills, who at no time relevant to this matter was employed as a commercial truck driver, wanted to ride with Tony Mills to see the country and take photographs.

On April 18, 2014, Kristi Mills signed a document in Kentucky relative to her riding as a passenger in a truck with Tony Mills while he was driving for LSH Transport, LLC.[1] The document stated:

> This letter is to be concerning Tony Mills carrying a passenger in truck #45 which he is lease purchasing. He may carry His wife Kristi Mills with him. LSH Transport LLC or Progressive Insurance not to be held responsible for any incident or Injuries to Passenger. Tony Mills to assume all responsibility for passenger.

---

[1] Defendants contend that the document was a "waiver," while the Estate of Kristi Mills characterizes it as a "letter." (Resp. to Defs' Facts ¶ 3, ECF No. 430-9.)

The document was signed by Kristi Mills, Tony Mills, and Kevin Hurt; Larry "Steve" Hurt notarized the document. The purpose of the document was for Kristi Mills, who did not have a commercial driver's license, to be able to ride with Tony Mills as a passenger.

The claims of the Estate of Kristi Mills against Defendants arise out of an accident on June 25, 2014, when Kristi Mills was riding as a passenger in a tractor-trailer being driven by Tony Mills. Kristi Mills and Tony Mills died as a result of the accident.

Following the accident, personnel with the West Tennessee Regional Forensic Center, Office of the Medical Examiner, performed an autopsy on Kristi Mills and Tony Mills. As part of the autopsies, the examiners took samples of postmortem blood and submitted the samples for toxicology analysis. Tony Mills' toxicology report was performed using femoral blood, and Kristi Mills' toxicology was performed using blood taken from her heart.

After analyzing the blood sample taken from Kristi Mills, Aegis Sciences Corporation issued a toxicology report. The toxicology report contained the following positive findings: methamphetamine 1260 ng/mL (reporting threshold of 50 ng/mL) and amphetamine 202 ng/mL (reporting threshold of 50 ng/mL), a metabolite of methamphetamine.

After analyzing the blood sample taken from Tony Mills, Aegis Sciences Corporation issued a toxicology report. The toxicology report contained the following positive findings: methamphetamine 1150 ng/mL and amphetamine 118 ng/mL.

Erica Curry, M.D., testified (Curry Dep., ECF No. 430-2) that she would expect cardiac blood to have a higher level of concentration of a drug than the level before death and that

cardiac blood is more susceptible to post-mortem redistribution than femoral blood.[2] Dr. Curry also testified that the time between death and the autopsy can affect post-mortem redistribution.[3]

Kristi Mills' autopsy was performed two days after she died.

According to Dr. Curry, every person responds differently to a pharmacological agent such as methamphetamine. A person may exhibit all, some, or none of the known effects. It is speculative to suggest what effects the methamphetamine had on Kristi Mills, and there are no scientific means for determining the effects methamphetamine has on a person based solely on the amount of methamphetamine present in their blood. There is no way to determine based on levels on post-mortem methamphetamine subject to redistribution whether a person was exhibiting certain effects at a specific time.[4]

There is no way to tell whether Tony Mills' exhibited any of the toxic effects of methamphetamine right after he took it. Nothing about the autopsy reports or the information Dr. Curry has indicates when Tony Mills last got into his truck before the wreck or whether he did methamphetamine in his truck or outside of the truck. There is no evidence as to the manner by which Tony Mills did the methamphetamine.[5]

---

[2] Defendants do not dispute that Dr. Curry testified as stated but contend that this is Dr. Curry's opinion and not a statement of fact. (Defs' Resp. to Add. Facts ¶ 3, ECF No. 449.)

[3] Again, Defendants do not dispute that Dr. Curry testified as stated but contend that this is Dr. Curry's opinion and not a statement of fact. (*Id.* at ¶ 4.)

[4] Defendants contend that these statements are opinions and not fact but do not dispute the statements for purposes of ruling on the motion for summary judgment only. (*Id.* at ¶¶ 7 - 10.)

[5] Defendants contend that these statements are opinions and not fact but do not dispute the statements for purposes of ruling on the motion for summary judgment only. (*Id*. at ¶¶ 11 - 13.)

In the months before the wreck, David Lindsey saw his mother, Kristi Mills, every week or two. David Lindsey spoke with his mother a few days before she died, and there was nothing about her voice or speech that indicated that she was on any kind of drugs at all. David Lindsey normally spoke with his mother once or twice a week whenever they found time. During the time he lived with her, David Lindsey never observed her using any kind of drugs. Prior to the wreck, David Lindsey had no indication that she was using methamphetamine or any other type of drug.

## Background and Analysis

The Estate of Kristi Mills has filed a cross-claim for the alleged wrongful death of Kristi Mills against various other parties, including the Movant Defendants LSH Transport; the Estate of Tony Mills; Steve Hurt; and K&S Trucking, an entity owned, in part, by Steve Hurt and which owned the tractor trailer that Tony Mills was driving at the time of the accident.[6] (ECF No. 250.) Movant Defendants contend that they are entitled to summary judgment on two grounds. First, they contend that the comparative fault of Kristi Mills in riding with Tony Mills even though he was under the influence of methamphetamine precludes recovery by her Estate. Second, they contend that, before her death, Kristi Mills signed a waiver of liability that releases the claims brought by her Estate except those brought against the Estate of Tony Mills.

Comparative Fault

Movant Defendants correctly note that, under Tennessee's comparative fault doctrine, a plaintiff is barred from recovery if it is determined that the plaintiff's own negligence was equal

---

[6] Claims against the Estate of Kristi Mills have been brought by the Estates of Ifeyinwa Stephanie Amalu and Chinelo Odeozo and by James and Glenda Hartmann. These claims are not related to the present motion.

6

or greater than that of the defendant in bringing about the injury alleged.[7] This Court has previously explained that

> Tennessee follows the modified comparative fault rule wherein a plaintiff who is forty-nine percent at fault can recover against a defendant who is fifty-one percent at fault, with the plaintiff's damages reduced in proportion to her negligence. Therefore, a plaintiff's own negligence would not necessarily be a complete bar to recovery. The adoption of this rule was due to considerations of fairness as "the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding that the plaintiff's fault was minor in comparison to defendant's."

*Lewis v. Norfolk S. Ry. Co.*, 618 F. Supp. 2d 833, 842 (W.D. Tenn. 2008) (citations and footnotes omitted).

In support of their argument, Movant Defendants rely on *Harvey v. Wheeler*, 423 S.W.2d 283, 285 (Tenn. Ct. App. 1967), for the proposition that "a guest-passenger is precluded from recovering for injuries sustained in an automobile accident [when] the intoxicated condition of the driver of the automobile in which [the passenger] was riding was a proximate cause of the accident, if the guest-passenger knew or should have known of the driver's intoxication at the

---

[7] The distinction between "comparative fault" and "comparative negligence" was explained in *Grandstaff v. Hawks*, 36 S.W.3d 482 (Tenn. Ct. App. 2000):

> Comparative negligence measures the plaintiff's negligence for the purpose of reducing the plaintiff's recovery. Comparative fault encompasses the allocation of recovery among multiple or joint tortfeasors according to their percentage of fault. The [Tennessee Supreme] Court made this distinction on the theory that a plaintiff's recovery may only be reduced because of the plaintiff's negligence, whereas a defendant's liability may be based on theories of liability other than negligence, for example, strict liability. *Owens v. Truckstops of Am.*, 915 S.W.2d at 426 n. 7.

*Grandstaff*, 36 S.W.3d 482, 491 n. 12 (Tenn. Ct. App. 2000). The parties have referred to the "comparative fault" of Kristi Mills in their motion and response, and, therefore, this is the term used by the Court.

time the guest-passenger volunteered to ride in the automobile." This reliance is misplaced because *Harvey* was decided prior to Tennessee's adoption of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). The Tennessee Court of Appeals pointed out the difference in Tennessee law pre and post *McIntyre* in *Hall v. Derrick*, 2004 WL 2191016 at *4 (Tenn. Ct. App. Sept. 24, 2004).

> In Tennessee, "[i]t is well-settled that passengers in motor vehicles have a duty to exercise reasonable or ordinary care for their own safety. This duty includes the duty to refrain from riding in an automobile operated by an intoxicated or reckless driver." *Biscan v. Brown*, M2001-02766-COA-R3-CV, 2003 WL 22955933, at *22 (Tenn Ct. App. Dec. 15, 2003) (citations omitted), *perm. app. granted*, May 10, 2004. In *Biscan*, the court recognized that, prior to Tennessee's adoption of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), a passenger's choice to ride with an intoxicated driver precluded recovery on the basis of contributory negligence or implied assumption of the risk, because the passenger had failed to avoid a known risk. *Id.*; *see also Henley* [*v. Amacher*], 2002 WL 100402, at *5 [Tenn. Ct. App. Jan 28, 2002] (noting that comparative fault principles "heralded the demise of both the doctrine of contributory negligence and the doctrine of implied assumption of the risk"). Under comparative fault principles, however, the failure to act reasonably in riding with an intoxicated driver does not automatically preclude the plaintiff from recovery. In such circumstances, the passenger's negligent conduct must be compared with the negligence of the intoxicated driver. *Biscan*, 2003 WL 22955933, at *22. The standard to be used is whether the passenger "knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile." *Id.* (quoting *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527, 531 (Tenn. Ct. App. 1993) (quoting *Harvey v. Wheeler*, 423 S.W.2d 283, 285 (Tenn. Ct. App. 1967))). The passenger's reasonableness is to be judged by the trier of fact under an "ordinarily prudent person" standard. *Id.* Once it is determined that the plaintiff and the defendant were both negligent, the trier of fact must then allocate the percentage of fault. *Id.* at *23.

The Court in *Hall* noted that "[u]nder principles of comparative fault . . . a passenger can be found to be less negligent than the driver, even if he was aware that the driver had been drinking when he got into the vehicle. In this situation, the passenger's negligence may reduce his recovery but does not bar it." *Hall*, 2004 WL 2191016 at * 6 (citing *Silcox v. Coffee*, 1993 WL 350134 at *5 (Tenn. Ct. App. Sept. 15, 1993) (approving a jury verdict finding that the

plaintiff passenger was 40% at fault when evidence showed that the passenger and driver had been drinking together and were both highly intoxicated)).

Despite Movant Defendants' argument, the undisputed facts of this case do not "make clear that Kristi Mills was at least fifty percent at fault in causing her injuries and death." (Mot. for Summ. J. p. 6, ECF No. 383-1.) Movant Defendants have not pointed to undisputed evidence showing that Kristi Mills knew that Tony Mills was under the influence of methamphetamine and still chose to ride with him. Instead, they ask the Court to infer Kristi Mills' knowledge from evidence that indicates that the level of methamphetamine in her blood was higher than that in Tony Mills' blood and that each had ingested the drug in close temporal proximity. The Court cannot make this inference in light of the evidence before it.

For example, there is a dispute as to whether scientific data exists as to what ranges of illicit drugs lead to death versus intoxication versus toxicity versus functioning correctly. Movant Defendants rely on the report of Glen E. Farr, Pharm.D., in support of their contention that there is such data (ECF No. 383-6), while the Estate of Kristi Mills relies on the deposition of Dr. Erica Curry (ECF No. 430-2) for the proposition that there is no such scientific data. This dispute leads to a further dispute as to whether the level of methamphetamine in Kristi Mills' blood sample was in the toxic range and whether she was under the influence of methamphetamine so as to be intoxicated at the time of her death.

It is also disputed as to whether Kristi Mills knew that Tony Mills was intoxicated when she last got into the truck with him. Dr. Curry testified that she was not "aware of any scientific means for determining the effects that meth had on [a] person based solely on the amount of meth present in their blood" post-mortem. (Dep. of Dr. Curry pp. 43-44, ECF 430-2.) She

further testified that she could not determine how much methamphetamine Tony Mills took or "what the effects were that he was exhibiting at the time." (*Id.* at p. 44.)

Movant Defendants have pointed to no evidence showing when Tony Mills took the methamphetamine, whether he was inside or outside the truck when he took it, whether Kristi Mills was present when it took it, or whether she was aware that he took it. The fact that Tony Mills did methamphetamine, in and of itself, does not lead to a finding on summary judgment that Kristi Mills had a duty to refrain from riding with him as a matter of law. Even in *Harvey*, the defendant had to show that the plaintiff "knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile." 423 S.W.2d at 285. Therefore, summary judgment is precluded.

Additionally, even if Kristi Mills is determined to be at some fault, the Court cannot find at this juncture that she was fifty per cent or more at fault, thus barring any recovery on her behalf. There are pending claims against Movant Defendants and others, any of whom may be found to have been at fault.

Under Tennessee law, "in cases of multiple tortfeasors, plaintiff will be entitled to recover so long as plaintiff's fault is less than the combined fault of *all* tortfeasors." *McIntyre*, 833 S.W.2d at 58. When a defendant argues that a plaintiff's fault precludes recovery, "[i]f the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great[er] than that of the defendants, summary judgment in the defendant's favor may be granted." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91–92 (Tenn. 2000) (citation omitted). However, "[i]n the majority of cases, the *McIntyre v. Balentine* …comparison and allocation of fault issues are properly left to the jury." *Prince ex rel. Bolton v. St. Thomas Hosp.*, 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996).

Applying these principles, this Court finds that there is a genuine dispute as to material facts as to whether Kristi Mills' fault was equal to or greater than the combined fault of all the alleged tortfeasors in this matter. Therefore, summary judgment is not appropriate on this ground.

Waiver of Liability

Next, Movant Defendants assert that a preinjury "waiver" signed by Kristi Mills exculpate them from liability, except for the Estate of Tony Mills. The Estate of Kristi Mills has responded that the document Kristi Mills signed is ambiguous and fails to meet the standards imposed by Kentucky law in order for a waiver to be valid.

The parties agree that the document is to be analyzed under Kentucky law since a release from liability is governed by contract law, *see Grass v. Akins*, 368 S.W.3d 150, 152 (Ky. Ct. App. 2012), and Tennessee's choice-of-law rules provide that the "[c]onstruction and validity of a contract are governed by the law of the place where the contract is made." *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973) (citation omitted). There is no dispute that the document at issue was signed by Tony Mills, Kevin Hurt (Steve Hurt's son), and Kristi Mills in Kentucky.

Movant Defendants have correctly stated the general law of Kentucky as it relates to waivers. In general, waivers of liability are valid under Kentucky law when certain requirements are satisfied unless enforcement would violate public policy. *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007). Movant Defendants acknowledge that a party cannot release another for willful or wanton negligence, although "a party to a contract may agree to release another from liability for ordinary or gross negligence."

*United Services Auto. Ass'n v. ADT Sec. Services, Inc.*, 241 S.W.3d 335, 341 (Ky. Ct. App. 2006) (citations omitted).

Additionally, Movant Defendants have correctly set forth the general standards governing the analysis of exculpatory agreements. "The wording of the release must be 'so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable.'" *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005) (quoting 57A Am.Jur.2d, Negligence § 52 (2004)). A preinjury waiver can satisfy this requirement in the following ways: "(1) it explicitly expresses an intention to exonerate by using the word 'negligence;' or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision." *Id.* Exculpatory agreements are generally "disfavored and are strictly construed against the parties relying upon them." *Id.* (citation omitted).

Because Movant Defendants Steve Hurt and K&S Trucking are not mentioned in the document and, thus, there is no clear and specific intent to release them from liability, any waiver would not be valid as to them. The only defendant who can arguably claim to be released from liability under the document is LSH Transport, LLC ("LSH Transport LLC or Progressive Insurance not to be held responsible for any incident or [i]njuries to Passenger." (ECF No. 262-1)). Therefore, the Court will consider this argument as it relates to LSH Transport only.[8]

Movant Defendants argue that the document meets Kentucky's waiver standards by clearly providing that LSH Transport is released from responsibility for any incident or

12

[i]njuries; by containing language that is only susceptible to one reasonable construction, i.e., the document was intended to exculpate LSH Transport from negligence and Tony Mills was to assume all responsibility for injuries to Kristi Mills; and because the hazard experienced by Kristi Mills (an accident resulting in injuries to her) falls within the release's language. This argument is not persuasive.

*Hargis v. Baize* involved a truck driver who worked as an independent contractor hauling logs for Baize, who owned a lumber yard. 168 S.W.3d at 39. Hargis was killed when a log from his truck hit him while it was being unloaded at the lumber yard. *Id.* Hargis' wife sued Baize, who defended in part, on the ground that Hargis had signed a release. *Id.* at 46-47. The court of appeals affirmed the trial court's grant of summary judgment. *Id.* The Kentucky Supreme Court, however, found that none of the conditions needed to be valid as a release from liability applied to the document signed by Hargis and remanded the case for entry of summary judgment on liability in Hargis' favor. *Id.* at 47-48.

Like the release in *Hargis*, the document in this case fails to meet the conditions needed for it to be enforced. The document does not mention the word "negligence" and merely talks about injuries and incidents. It does not specifically release LSH Transport for its own conduct. And, as the *Hargis* Court found that injury from the failure to secure a load of logs was not specifically within the contemplation of the release, likewise this Court finds that Kristi Mills' death due to the actions of the parties in this case was not specifically within the contemplation of the document. The document refers to itself as a "letter," is directed to "Safety," discusses Kristi Mills' permission to ride in the truck, and only generally mentions responsibility for

---

[8] Progressive Casualty Insurance Company has been dismissed from the action. (ECF No. 298.)

"incidents and injuries." The document is unclear as to what kinds of claims could be released and whether such a release would apply to claims other than the direct negligence of LSH Transport. For example, LSH Transport is an alleged statutory employer of Tony Mills and, therefore, may be vicariously responsible for Tony Mills' actions as LSH Transport's agent and/or independent contractor. The document says nothing about responsibility for negligence imputed to LSH Transport through Tony Mills' actions. Thus, the document is not clear and "unmistakable" as to what is being released as required by *Hargis*.

Furthermore, under Kentucky law, parties cannot contract away liability for willful or wanton negligence, as acknowledged by Movant Defendants.[9] (Mot. for Summ. J. pp. 9-10, ECF No. 383-1.) *See Donegan v. Beech Bend Raceway Case Park, Inc.*, 894 F.2d 205, 208 (6th Cir. 1990) (stating that under Kentucky law a party may release another for ordinary or gross negligence but not for willful or wanton negligence). Here, the Estate of Kristi Mills has alleged that Tony Mills and LSH Transport willfully or wantonly engaged in unsafe conduct that was a proximate cause of the wreck and the death of Kristi Mills. (Counterclaim/Cross-Claim ¶¶ 78, 109, ECF No. 250.) If the trier-of-fact finds that the conduct of Tony Mills and LSH Transport was willful or wanton, then that conduct would be outside the scope of a waiver.

LSH Transport also acknowledges that Kentucky generally precludes a party from contracting away its liability for violation of a safety statute when the parties are of unequal bargaining power, but it likens the document in this case to agreements found to be enforceable in cases involving voluntary recreational pursuits. In support of its argument that Kristi Mills'

---

[9] Willful or wanton negligence is distinguishable from gross negligence under Kentucky law. Gross negligence signifies "the absence of slight care." *Donegan*, 894 F.2d at 207 (citation omitted). Willful or wanton negligence signifies "the entire absence of care for the life, person or

decision to ride with Tony Mills was voluntary, LSH Transport relies on *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 (W.D. Ky. 1984), and its progeny. In upholding a release signed by a contestant in an auto race, the *Dunn* Court emphasized that the races affected private interests between parties of equal bargaining power and the races likely could not continue without them. *See Donegan*, 894 F.2d at 207 (discussing the reasoning of *Dunn* reasoning and characterizing it as an exception limited to racetracks). The present case does not does not involve private interests; instead, it involves the transportation of goods in interstate commerce on public roadways and accompanying federal safety regulations.

At this juncture, there is no evidence showing that Kristi Mills had equal bargaining power with LSH Transport. *C.f. Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 651 (Ky. 2007) ("We find this exculpatory clause to be valid, even in light of recent authority disallowing a party to contract away liability for violation of safety statutes. [T]he parties shared the duty of preparing accurate mine projection maps to comply with statutes aimed at furthering mine safety. Furthermore, no significant disparity in bargaining power existed between the contracting parties . . . unlike most cases in which exculpatory clauses were deemed invalid due to safety statute violations or other public policy concerns.") As noted by the Estate of Kristi Mills, it appears that the document was offered to Kristi Mills on a take it or leave it basis. While federal regulations require paperwork documenting that a passenger is authorized, nothing in the regulations require the motor carrier to seek absolution of itself from liability. This case, then, falls outside the exception recognized in *Dunn*.

---

property of others[ ]" with "an element of conscious disregard of the rights or safety of others, which deserves extra punishment in tort." *Id.* (citation omitted).

Additionally, any contract between Kristi Mills and LSH Transport fails for lack of consideration. The Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.60 ("Unauthorized persons not to be transported") prohibit passengers from riding in a commercial motor vehicle except under limited circumstances. One such circumstance is if the person is authorized to ride in writing. The regulation states that the writing "shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires." 49 C.F.R. § 392.60(a). The document in this case does not comply with the regulations because it does not list the points of origin and destination, nor does it have an expiration date. Therefore, there is evidence from which the trier-of-fact could find that Kristi Mills was an unauthorized passenger. (Allen Dep. pp. 47, 163-65, ECF No. 430-1.) As such, she never received the benefit of the bargain, i.e., the legal right to ride in the truck with her husband, and the contract fails for a lack of consideration. Without consideration, the contract is not binding.

For these reasons, LSH Transport has failed to show that the document signed by Kristi Mills was a valid waiver as to its liability for any claims made by her or her estate.

Accordingly, the motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 10, 2018.